# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

A.R.

        Plaintiff,

-vs-                                                  Case No: 18-cv-1554

BOARD OF REGENTS OF THE
UNIVERSITY OF WISCONSIN SYSTEM,
MICHAEL BEITZ and GAIL PANSKE

        Defendants.

## AMENDED COMPLAINT

NOW COMES the plaintiff by her attorneys FOX & FOX, S.C. and as and for a complaint against the defendants, Board of Regents of the University of Wisconsin System, Michael Beitz and Gail Panske states as follows:

### I.    JURISDICTION AND VENUE

1.    This is a civil action alleging that defendants deprived plaintiff of her rights under 20 U.S.C. § 1681 (Title IX) and the Equal Protection Clause of the Fourteenth Amendment as guaranteed by 42 U.S.C. § 1983.

2.    This court has subject matter jurisdiction over plaintiff's claims under 28 U.S.C. §§ 1331 and 1343.

3. The Eastern District of Wisconsin is a proper venue for this action under 28 U.S.C. § 1391(b) because a substantial part of the events and omissions giving rise to plaintiff's claims occurred in this district.

## II. PARTIES

4. Plaintiff, A.R., is an adult resident of the State of Wisconsin currently residing in Outagamie County. Plaintiff was at all times relevant to this complaint an undergraduate art student at the University of Wisconsin Oshkosh.

5. Defendant Board of Regents of the University of Wisconsin System ("the Board") is an institution of higher education and an agency of the State of Wisconsin, established under Wis. Stat. Ch. 36, with its principal place of business located at 1220 Linden Drive, Madison, WI 53706. The Board is the governing body for University of Wisconsin system schools including the University of Wisconsin Oshkosh. Upon information and belief, the Board is a recipient of federal financial assistance within the meaning of Title IX.

6. Defendant Michael Beitz is an adult resident of the State of Colorado, with a business address of 1085 18th Street, UCB 318, Boulder, CO 80309-0318. At all times relevant to this complaint defendant Beitz was employed as an Assistant Professor of Art at the University of Wisconsin Oshkosh. All actions alleged in this complaint to have been taken by defendant Beitz were taken under color of state law within the meaning of 42 U.S.C. § 1983 and while carrying out his duties as a public employee and within the scope of his

employment by the Board. Defendant Beitz is being sued in this matter in his individual capacity.

7. Defendant Gail Panske is an adult resident of the State of Wisconsin whose current business address is Arts and Communication Center 325, 926 Woodland Avenue, Oshkosh, Wisconsin 54901. At all times relevant to this complaint defendant Panske was employed as a Professor of Art at the University of Wisconsin Oshkosh and she also served as Art Department Chair responsible for supervising defendant Beitz and ensuring he had knowledge of and complied with University policies including the consensual relationships and sexual harassment policies. All actions alleged in this complaint to have been taken by defendant Panske were taken under color of state law within the meaning of 42 U.S.C. § 1983 and while carrying out her duties as a public employee and within the scope of her employment by the Board. Defendant Panske is being sued in this matter in her individual capacity.

### III. FACTUAL ALLEGATIONS

8. Plaintiff was enrolled as an undergraduate art student at the University of Wisconsin Oshkosh from fall term 2011 to spring 2014.

9. In spring 2014 plaintiff withdrew early because of severe depression, and deterioration in her physical and mental health caused by a coerced and emotionally abusive sexual relationship with one of her professors, defendant Michael Beitz.

10. Defendant Beitz was employed as an Assistant Professor of Art at the University of Wisconsin Oshkosh from fall term 2011 until June 2015.

11. Plaintiff was a student in art courses taught by defendant Beitz each semester from fall 2011 through fall 2013. She also worked as his Sculpture Studio assistant from March 2012 to June 2102 and from September 2012 to June 2013, as well as his personal assistant.

12. Defendant Beitz used his position as a University professor, and plaintiff's supervisor to pursue and maintain an unwelcome sexual relationship with plaintiff in violation of the University's Consensual Relationships Policy, GEN 1.2. (7), and Sexual Harassment Policy, GEN 1.2. (6), as well as in violation of federal law prohibiting sexual harassment.

13. In fall semester 2011 when he first began teaching Professor Beitz went to local bars with students including plaintiff and her boyfriend, to drink and sketch. During these outings Beitz was inappropriately affectionate toward plaintiff, for example, kissing her on the head on one occasion and presenting her with a framed drawing on her birthday.

14. In February 2012 plaintiff confided in Beitz that she was upset about a break up with her boyfriend and he then invited her to his apartment and served her alcohol and had sex with her.

15. Professor Beitz carried on a sexual relationship with plaintiff over the next three years, which over time became unwelcome and created an

4

intimidating, hostile and abusive employment and educational environment for plaintiff.

16. Professor Beitz was thirteen years older than plaintiff and married. While Beitz assured plaintiff that he and his wife had an open relationship, he also made clear that plaintiff was not to tell anyone about their relationship and to keep it secret.

17. Beitz showed favoritism toward plaintiff as compared to other students and allowed her to work on special projects and in the Sculpture Studio.

18. Over the course of their relationship Professor Beitz had sex with plaintiff numerous times both off and on campus including in the Sculpture Studio, woodshop and in his office, as well as while on University related trips.

19. Beitz shared a room with plaintiff in Michigan when she helped set up one of his exhibits in March or April 2012. Plaintiff went as Beitz' personal assistant, although she was also his student and sculpture lab assistant at the time.

20. Beitz also arranged for a University sponsored trip to New York City in December 2012 and selected a small group of students from his Sculpture I class to attend, which included plaintiff.

21. During the trip to New York City another art student to whom plaintiff had confided her relationship with Beitz, against his wishes, confronted Beitz about the relationship and he felt threatened.

22. The student who confronted Beitz had a complete mental breakdown while in New York City. Nonetheless, Professor Beitz vilified the student, even though she was ill, and excluded her from any activities in which he and plaintiff were involved.

23. After the New York City trip the student's mother sent an email to the Chair of the Art Department, defendant Gail Panske, complaining about the trip and Beitz' inappropriate relationship with plaintiff. In January 2013 a student also sent Panske an email complaining about Beitz' inappropriate relationship with plaintiff.

24. Although defendant Panske talked to Beitz about the email from the student's mother, she did not take any action to investigate the two complaints or refer them for investigation as required in her role as Department Chair.

25. Defendant Panske did not specifically ask Beitz if he was having a relationship with plaintiff.

26. Defendant Panske did not take any action at all to counsel, warn or discipline Beitz regarding his inappropriate relationship with plaintiff, which clearly violated the University's consensual relationships and sexual harassment policies, but instead turned a blind eye to it causing plaintiff to be subjected to further sexual harassment and/or making her more vulnerable to it.

27. Defendant Panske took no action to preserve and, instead, allowed the parent complaint and student complaint about Beitz inappropriate

relationship with plaintiff to be destroyed in violation of University policy, as well as public record laws.

28. In January 2013 plaintiff was hospitalized for severe depression and anxiety caused by the relationship with Professor Beitz. When she was discharged from the hospital plaintiff tried to distance herself from Beitz.

29. Professor Beitz knew plaintiff was emotionally fragile and used her vulnerability to manipulate their relationship. He knew early on she was on anti-depressant medication and, he also knew she was admitted to a psychiatric hospital in January 2013. Still Beitz continued to carry on a sexual relationship with plaintiff during spring term 2013.

30. In late spring/summer 2013 plaintiff met someone else, became involved in a serious relationship with him and tried to separate herself from Beitz.

31. Beitz was threatened by plaintiff's new relationship and directed unwanted sexual advances and sexual behaviors toward plaintiff that substantially interfered with her ability to study and to work.

32. In September 2013 Beitz asked plaintiff to help him set up one of his sculptures at the Madison Museum of Contemporary Art. Plaintiff's old boyfriend, who had been a student in one of Beitz' classes, also came to help and plaintiff assumed that with him included she would be safe from any advances from Beitz.

33. However, when plaintiff was alone with Beitz he pressured her to have sex, which was unwelcome, and then panicked and insisted she take the Plan B pill.

34. Plaintiff resisted, explaining she was on birth control and it was unnecessary. However, the next day Beitz drove plaintiff to Walgreens, bought her a Plan B and watched her take it in his car. Plaintiff protested, concerned about the possible side effects of such a serious pill, but Beitz made her take it anyway.

35. In fall 2013 Professor Beitz vandalized an important sculpture of plaintiff's---a plaster bust of her head she had completed in a previous sculpture class, which was stored in the sculpture lab on her project shelf. Beitz drilled holes in the ears and into the mouth and proceeded to have sexual intercourse with the plaster bust. He then ejaculated into it. Afterwards he showed plaintiff the vandalized bust in the Arts & Communications building at the University.

36. Before the destruction of her plaster bust Beitz made a drawing of plaintiff sleeping, ejaculated on the drawing and showed it to plaintiff.

37. Plaintiff felt threatened by Beitz behavior, which was intimidating and degrading.

38. Beitz also sexually harassed plaintiff by trying to kiss her in S111 in the Arts & Communication building and by trying to kiss her in her new apartment and by telling her he would leave his wife for her. These sexual advances and comments were unwelcome.

39. In fall 2013 plaintiff was still in classes with Beitz and he displayed inconsistent behaviors toward her treating her very coldly at times and then looking depressed and trying to get close to her at other times, for example, by trying to kiss her in S111 in the Arts & Communication building.

40. Plaintiff felt very anxious and unsafe at school. Plaintiff's anxiety became so intense she began vomiting in the hours leading up to class and she stopped going to class altogether in order to avoid Beitz. Plaintiff failed the semester and became introverted and extremely depressed.

41. Plaintiff attempted to return to school in spring 2014, but after attending classes for approximately two weeks she felt as though she could not come back again. The Arts & Communication building, as well as Oshkosh in general, became a constant reminder of her traumatic experiences with Beitz. During this time plaintiff was suicidal and she withdrew from school and moved out of the state for her physical and emotional health.

42. In March 2014 plaintiff contacted the department chair, defendant Gail Panske, by email and told her about the inappropriate relationship with Professor Beitz. Plaintiff also sent the same or similar email to another professor, Trina Smith.

43. Panske subsequently forwarded plaintiff's statement to Terri Gohmann, Assistant Dean of Students and Dr. Sharon Kipetz, Assistant Vice Chancellor and Interim Investigator for Equity and Affirmative Action.

44. Panske also spoke to Beitz and, although he admitted to having a relationship with plaintiff, no action was taken against him for his blatant violations of either the University's Consensual Relationships Policy and or its Sexual Harassment Policy.

45. After contacting Panske plaintiff spent the next couple of months talking to Dr. Kipetz over the phone and working up the courage to file a formal complaint against Professor Beitz.

46. On August 4, 2014 plaintiff decided to come back to Oshkosh to follow through with her complaint, however, when she returned her old boyfriend, who had been in contact with Beitz, told her she was making a mistake and convinced her to talk to Beitz, who she had not spoken with for five months.

47. Plaintiff then spoke to Beitz over the phone and after a two-hour long conversation he had convinced her to retract her complaints with the University. Afterwards they spoke by phone almost every day.

48. During these conversations Beitz told plaintiff that when she stopped going to school he had smelled her perfume and searched the building for her. He told her he loved her, but he had to see where things went with his wife and, if things ended with his wife he would stalk her.

49. During these conversations Beitz tried to rationalize his sexual harassment of plaintiff as his way of supposedly expressing his longing and love for her.

50. At one point Beitz pressured plaintiff to write Panske a letter retracting her allegations in order to "clear his name." Plaintiff had told Panske the truth about her experiences and she did not feel comfortable with Beitz asking her to tell Panske that none of it had happened. It made plaintiff extremely upset.

51. In pressuring plaintiff to withdraw her allegations of sexual harassment defendant Beitz interfered with plaintiff's exercise of her rights under Title IX in violation of 34 C.F.R. § 106.71 (incorporating 34 C.F.R. § 100.7(e) by reference) prohibiting retaliatory acts.

52. Dr. Kipetz told Beitz on May 6, 2014, July 2, 2014 and mid-August 2014 not to have any contact with plaintiff, but he ignored her warnings. Still no disciplinary action was taken against Beitz who continued to intimidate and harass plaintiff.

53. After plaintiff returned to Oshkosh in August 2014 Beitz coerced sexual conversation with plaintiff including receiving and storing nude photos of her.

54. Plaintiff ended all conversation with Beitz around mid-October 2014 and on or about November 21, 2014 she filed a formal complaint of sexual harassment with the Office of Equity and Affirmative Action.

55. When plaintiff decided to move forward with an official complaint Beitz used his Tumblr account against her. He put up new social media postings

and pictures of a sexual nature several of which were labeled "bitch", which plaintiff believes were aimed at her, further retaliating against her.

56. The University investigated plaintiff's allegations and on March 11, 2015 issued a report finding that Beitz had violated the University's Consensual Relationships Policy, GEN 1.2. (7), and Sexual Harassment Policy, GEN 1.2. (6).

57. The University found that Beitz had introduced inappropriate sexual activities and comments into the work and learning situation, which had the purpose or effect of substantially interfering with plaintiff's academic performance and creating a hostile employment and educational environment.

58. The University found that the inappropriate sexual activities and comments introduced into the work and learning situation by Beitz included:

- Drinking with plaintiff at bars, along with other students, and in spring 2012, serving her alcohol at his home and having sex with her, when she was his student.

- Engaging in sexual activity with plaintiff on campus.

- Drawing a picture of plaintiff sleeping, ejaculating on it and showing it to her in fall 2013.

- Reporting to plaintiff in fall 2013 that he drilled holes into the plaster bust she had created of herself, performed sexual acts on it and ejaculated.

- Trying to kiss plaintiff in fall 2013 in the Arts & Communication building, when it was not welcome.

- Trying to kiss plaintiff in fall 2013 in her new apartment, when it was not welcome.

- Demonstrating inconsistent behavior and treatment toward plaintiff in the classroom, especially in fall 2013 when plaintiff was trying to separate herself from their relationship.

- Coercing plaintiff in Madison in fall 2013 to have sex with him and to take the day after pill.

- Continuing to talk to plaintiff in fall 2014, after being told by University officials not to, and by coercing sexual conversation with her, including receiving and storing nude photos of her.

- Contacting plaintiff in fall 2014 even when she specifically told Beitz not to contact her.

- Telling plaintiff in fall 2014 that after she stopped going to school he had smelled her perfume and searched the building for her.

59. The University found that although the relationship between Beitz and plaintiff may have begun as consensual by fall 2013 Beitz' sexual advances toward her were clearly unwelcome.

60. The University found that Beitz' behavior caused plaintiff substantial harm. She felt unsafe and extremely anxious and she stopped attending classes in order to avoid Beitz. As a result, she failed fall semester 2013 and she withdrew from classes spring semester 2014 due to severe depression. She left the University in debt.

61. Although the University found that Beitz had subjected plaintiff to a sexually hostile environment so severe and pervasive that it deprived her of the educational opportunities and benefits provided by the school, the defendant Board of Regents of the University of Wisconsin System took no formal action against him, but instead allowed him to finish out the semester teaching art. Beitz then moved on to a new teaching post at the University of Colorado.

62. In failing to take any formal action against Beitz the Board acted with deliberate indifference to plaintiff's rights under Title IX.

63. Gail Panske, who was Art Department Chair and Beitz' supervisor and, thus, in a position to take corrective action, had actual notice of Beitz' misconduct based on complaints she had received from a student and student parent in December 2012 and January 2013 regarding his inappropriate sexual relationship with plaintiff. Plaintiff had also complained to Panske in March 2014 about Beitz' inappropriate sexual conduct and emotionally abusive behaviors.

64. However, defendant Panske and, thus, also the Board did not take any effective action on any of these occasions to address Beitz' sexual harassment of plaintiff and, instead, acted with deliberate indifference to it, thereby, causing plaintiff to undergo further harassment and/or making her liable or vulnerable to it.

65. Thus, the Board, Beitz and Panske are all liable for the substantial damages caused by Beitz' misconduct.

### IV. FIRST CAUSE OF ACTION

66. For a first cause of action against the defendant Board for sex discrimination and sexual harassment under Title IX, plaintiff re-alleges each of the preceding paragraphs as though set forth herein.

67. By engaging in the conduct described in the preceding paragraphs, including but not limited to acting with deliberate indifference to Beitz' sexual harassment of plaintiff, which substantially interfered with plaintiff's academic

and work performance and created a hostile educational and work environment, the defendant Board discriminated against plaintiff on the basis of her sex in violation of her rights under Title IX.

68. By engaging in the conduct described in the preceding paragraphs, including but not limited to acting with deliberate indifference to Beitz' sexual harassment of plaintiff, the Board effectively denied plaintiff the opportunity to participate in or benefit from the school's educational program.

69. The Board's conduct, as described above, caused plaintiff to suffer substantial damages, including but not necessarily limited to physical and psychological injuries, severe emotional distress, loss of earning capacity, and substantial medical and educational expenses. The plaintiff will continue to suffer these damages in the future.

70. The Board's conduct, as described above, was willful and malicious and/or undertaken with intentional or reckless disregard of plaintiff's federally protected rights, thereby entitling plaintiff to an award of punitive damages against the Board.

## V. SECOND CAUSE OF ACTION

71. For a second cause of action against defendant Michael Beitz for sex discrimination and sexual harassment under the Equal Protection Clause of the Fourteenth Amendment and 42 U.S.C. § 1983, plaintiff re-alleges each of the preceding paragraphs as though set forth herein.

72. By engaging in the conduct described in the preceding paragraphs, including but not limited to subjecting plaintiff to unwelcome sexual advances and other comments and behaviors of a sexual nature, defendant Beitz created a hostile and abusive educational and work environment, which substantially interfered with and/or denied plaintiff the opportunity to participate in or benefit from the school's educational program.

73. By engaging in the conduct described in the preceding paragraphs defendant Beitz discriminated against plaintiff on the basis of her sex in violation of her rights under the Equal Protection Clause of the Fourteenth Amendment and 42 U.S.C. § 1983.

74. Defendant Beitz' conduct, as described above, caused plaintiff to suffer substantial damages, including but not necessarily limited to physical and psychological injuries, severe emotional distress, loss of earning capacity, and substantial medical and educational expenses. The plaintiff will continue to suffer these damages in the future.

75. Defendant Beitz' conduct, as described above, was willful and malicious and/or undertaken with intentional or reckless disregard of plaintiff's federally protected rights, thereby entitling plaintiff to an award of punitive damages against defendant Beitz.

## VI. THIRD CAUSE OF ACTION

76. For a third cause of action against defendant Beitz for retaliation under Title IX, plaintiff re-alleges each of the preceding paragraphs as though set forth herein.

77. By engaging in the conduct described in paragraphs 42 to 52, above, including but not limited to pressuring plaintiff to withdraw her complaint of sexual harassment and subjecting plaintiff to ongoing sexual harassment and intimidation when she refused, defendant Bietz retaliated against plaintiff for the exercise of her rights under Title IX in violation of Title IX and its implementing regulations including 34 C.F.R. §§ 106.71 and 100.7(e), which provide that "No recipient or other person shall intimidate, threaten, coerce or discriminate against any individual for the purpose of interfering with any right or privilege secured by [Title IX]."

78. Defendant Beitz' retaliatory conduct, as described above, caused plaintiff to suffer substantial damages, including but not necessarily limited to physical and psychological injuries, severe emotional distress, loss of earning capacity, and substantial medical and educational expenses. The plaintiff will continue to suffer these damages in the future.

79. Defendant Beitz' retaliatory conduct, as described above, was willful and malicious and/or undertaken with intentional or reckless disregard of plaintiff's federally protected rights, thereby entitling plaintiff to an award of punitive damages against defendant Beitz.

## VII. FOURTH CAUSE OF ACTION

80. For a fourth cause of action against the defendant Board for retaliation under Title IX, plaintiff re-alleges each of the preceding paragraphs as though set forth herein.

81. The defendant Board was clearly aware of Beitz' retaliatory behavior toward plaintiff as described in paragraphs 45 to 55, above, through her complaints to the Office of Equity and Affirmative Action.

82. However, the Board failed to take any effective action to address Beitz' retaliation and, instead, acted with deliberate indifference to it, thereby causing plaintiff to undergo further harassment and/or making her liable or vulnerable to it.

83. Thus, the Board is also responsible for damages to plaintiff caused by Beitz' retaliatory behavior including but not necessarily limited to physical and psychological injuries, severe emotional distress, loss of earning capacity, and substantial medical and educational expenses. The plaintiff will continue to suffer these damages in the future.

84. The Board's conduct, as described above, was willful and malicious and/or undertaken with intentional or reckless disregard of plaintiff's federally protected rights to be free from retaliation, thereby entitling plaintiff to an award of punitive damages against the Board.

## VII. FIFTH CAUSE OF ACTION

85. For a fifth cause of action against the defendant Gail Panske under the Equal Protection Clause of the 14th Amendment and 42 U.S.C. § 1983 plaintiff realleges each of the preceding paragraphs as though set forth herein.

86. By turning a blind eye to defendant Beitz sexual harassment of plaintiff, and permitting the conduct described in paragraphs 23-55 and 63-65, above, defendant Panske violated plaintiff's rights to equal protection as guaranteed by the 14th Amendment and 42 U.S.C. § 1983.

87. By turning a blind eye to defendant Beitz sexual harassment of plaintiff, and permitting the conduct described in paragraphs 23-55 and 63-65, above, defendant Panske caused plaintiff substantial damages, including but not necessarily limited to physical and psychological injuries, severe emotional distress, loss of earning capacity, and medical and educational expenses. The plaintiff will continue to suffer these damages in the future.

88. By turning a blind eye to defendant Beitz sexual harassment of plaintiff, and permitting the conduct described in paragraphs 23-55 and 63-65, above, defendant Panske acted in reckless disregard of plaintiff's federally protected rights, thereby entitling plaintiff to an award of punitive damages against defendant Panske.

## VIII. JURY DEMAND

WHEREFORE, the plaintiff demands a trial by jury on all her claims and relief as follows:

A. Compensation for physical and psychological injuries and emotional distress;

B. Compensation for loss of earning capacity, both past and future;

C. Compensation for medical and educational expenses and other pecuniary losses;

D. Punitive damages;

E. A finding of unlawful sex discrimination and sexual harassment in violation of federal statutory and constitutional law;

F. A finding of unlawful retaliation in violation of Title IX;

G. Prejudgment interest;

F. Reasonable attorney fees and costs incurred in this action; and

H. Any other relief the Court may deem just and proper.

Respectfully submitted this 15th day of February 2019:

FOX & FOX, S.C.

S/Mary E. Kennelly

_____

Mary E. Kennelly
SBN: 01019036
124 West Broadway
Monona, WI 53716
Telephone: 608/258-9588
Facsimile: 608/258-9105
E-mail: mkennelly@foxquick.com